IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-cv-00019-W

| | |
|---|---|
| AVANTI HEARTH PRODUCTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| JANIFAST, INC., et. al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

THIS MATTER comes before the Court on several motions. Defendants Janifast, Inc., and mPhase Technoglogies, Inc., have submitted jointly a Motion for Partial Summary Judgment (Doc. No. 42), which has been fully briefed (Doc. No. 43, 46, 49) and is ripe for ruling. Plaintiff Avanti Hearth Products, LLC, has filed a Motion to Dismiss Defendant Janifast, Inc.'s counterclaims (Doc. No. 65) and a Motion to Dismiss Defendant mPhase Technologies, Inc.'s counterclaims (Doc. No. 67). These motions have been fully briefed by the parties (Docs. Nos. 66, 68, 69, 70, 71) and are now ripe for review. Related to these motions to dismiss counterclaims is a Motion for Leave to File New Counterclaims and Affirmative Defenses (Doc. No. 72), filed on behalf of both Defendants Janifast and mPhase Technologies. This motion has also been fully briefed (Docs. Nos. 73, 75, 76, 77) and is ripe for review. The Court addresses each motion in turn.

### I. BACKGROUND

Plaintiff, Avanti Hearth Products, LLC, ("Avanti") was formed in 2003 and is a distributor of fireplace remote control products. Defendants Janifast, Inc., Janifast Ltd. ("Janifast"), mPhase Technologies, Inc. ("mPhase"), and Microphase Corp. ("Microphase"), are distinct business entities which Plaintiff alleges co-mingle, share employees and assets, and engage in the business of trade

under the combined trade name "Janifast." Plaintiff alleges that in mid-July of 2005, the President of Avanti, Loren Packard, met with Derrick Breen the Vice President of Business Development for Janifast, a company which deals in electronic devices and components for use in consumer products. Packard and Breen discussed the development of fireplace remote control units to be marketed and sold by Avanti.

On November 15, 2005, Janifast issued a document to Packard. The characterization of this document is the quintessence of this litigation. On its face, the document provides for Janifast to design certain products for Avanti over a twelve week period and for a stated price of $14,000. The document also contains the following type-printed language near the bottom of the page: "Janifast will issue manufacturing quotation upon design completion;" and, "Tooling required to manufacture the designs will be quoted upon design completion." The document also contains the following contents hand scratched in the margin: "Agree to Purchase 20 K units - 2006/2007 at quoted priced," signed "Loren Packard, V.P." and dated "Nov[.] 30, 2005."

Plaintiff contends that the document constitutes a contract providing for the design *and manufacture* of the fireplace remote control systems in accordance with Packard's hand-scrawled "[a]gree to purchase" language. Plaintiff further claims that his signature denotes acceptance of the contract and solidification of its terms requiring that: 1) Janifast provide working samples of the fireplace remote control systems for laboratory and Federal Communications Commission testing on or before March 19, 2006; and 2) Plaintiff purchase 20,000 units per year for 2006 and 2007. (Doc. 46).

Contrary to Plaintiff's assertions, Defendants claim that the document merely provided a quote for the design of a Receiver and two Transmitters in an effort to fix Avanti's failing components, and that Packard's singlehanded "Agree to purchase" amendment does not create

2

enforceable obligations to manufacture materials in accordance with these terms. (Doc. 43) Rather, Defendant contends that negotiations on any future manufacturing agreement dragged into the next year, while the design of the units remained incomplete. Id. The parties agree that no FCC submissions were ever made with respect to any components tendered, and no conforming samples of the fireplace remote control system were delivered to Plaintiff. Id.

Plaintiff filed suit in the General Court of Justice, Superior Court Division for Gaston County, North Carolina on August 14, 2009, alleging Defendants breached their contractual obligations under the document. On November 23, 2009, Plaintiff amended its complaint after being ordered by the state court judge to add Janifast Ltd. as a necessary party. In its amendment, and without court approval, Plaintiff also added mPhase and Microphase as defendants. On January 19, 2010, the action was marked for removal to the United States District Court for the Western District of North Carolina.

Following a hearing on June 10, 2010, this Court found that Plaintiff exceeded the state court's order to add Janifast Ltd. as a necessary party when it added mPhase and Microphase. The Court, however, granted Plaintiff leave to amend its complaint to properly add the two parties as defendants in this suit. Plaintiff filed its seconded amended complaint on June 14, 2010. Plaintiff later requested and was granted leave of court to file a Third Amended Complaint, which was filed on June 7, 2011.

In its response to Plaintiff's Third Amended Complaint, Defendants Janifast and mPhase each asserted counterclaims of fraud heretofore unraised in the previously-submitted Answer and Answer (Amended) to the Complaint. For this reason, Plaintiff filed Motions to Dismiss the Counterclaims of both Defendant Janifast and mPhase (Docs. Nos. 66, 67), and Defendants have filed a Motion for Leave to File New Counterclaims and Affirmative Defenses. Following a detailed

3

briefing by the parties, these Motions, as well as Defendants' jointly-submitted motion for Summary Judgment, filed March 15, 2011, are ripe for review.

## II. DISCUSSION

### A. Defendants' Counterclaims and Affirmative Defenses

A majority of the outstanding Motions currently before this Court pertain to Defendants' assertion of novel counterclaims and affirmative defenses incorporated within Defendants' separately-filed Answer and Counterclaims to Plaintiff's Third Complaint. (Docs. No. 60 and 61). In response to these new allegations, Plaintiff moved to dismiss these counterclaims. In response to Plaintiff's Motions, Defendants have jointly filed a Motion for Leave to File New Counterclaims and Affirmative Defenses ). Defendants' joint Motion is likewise supported by multiple briefs on the merits.

In essence, Defendants petition this Court to recognize retroactively the counterclaims that they asserted in their respectively-filed Answer and Counterclaims to Plaintiff's Third Amended Complaint. Defendants ask that these documents remain filed in their entirety and that no portions thereof be dismissed or stricken from the record. On the other hand, Plaintiffs seek to dismiss these counterclaims, arguing that such claims were dilatorily asserted in the eleventh hour before trial and, thus, resulted in prejudice to the preparation of Plaintiffs's case. Thus, if the Court grants Defendants leave to file new counterclaims, Plaintiff's motions to dismiss the counterclaims must fail.

It is well established that a district court's discretion to grant leave to amend is guided by the "principle, embodied in Rule 15(a) that 'leave shall be freely given when justice so requires,' and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.), cert. denied, 448 U.S. 911 (1980). In

4

Case 3:10-cv-00019-FDW -DCK   Document 81   Filed 11/16/11   Page 4 of 11

Forman v. Davis, 371 U.S. 178 (1962), the Supreme Court offered direction to District Courts attempting to make such a determination:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought should as the rules require, be "freely given."

Id. at 182. Moreover, "[d]elay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." Davis, 615 F.2d at 613. In fact, the Fourth Circuit has explicitly stated that "delay is a secondary consideration, in that it cannot block an amendment which does not prejudice the opposing party." McDermott, Ltd. v. Moretz, 99 F.2d 418 (4th Cir. 1990) (finding that the lower court erred in failing to allow a defendant to assert an additional defense of fraud where no evidence of prejudice was shown).

In this case, no prejudice to Plaintiff has been proven to warrant this Court denying Defendants' an opportunity to have their counterclaims undergo a testing on the merits. Even assuming arguendo that Defendants' assertion of counterclaims was originally untimely in relation to the initial September 12, 2011, trial date, any such potential prejudice has been remedied by the Court's *sua sponte* continuance of the trial date six entire months to March 12, 2011. As a result of this docket adjustment, Plaintiff has received sufficient notice to prepare its defense against each these counterclaims.

Since no prejudice resulted from Defendants' assertion of counterclaims, and since this Court favors a resolution of this case based on the merits, the Court finds that leave should be granted to amend defendants' counterclaims. Accordingly, Defendants' Motion for Leave to File New

5

Counterclaims and Affirmative Defenses is GRANTED. Thus, the counterclaims asserted within Defendants' independently filed Answer and Counterclaims to Plaintiff's Third Complaint (Docs. No. 60 and 61) shall remain filed in their entirety, and Plaintiff's Motions to Dismiss is DENIED for a lack of prejudice.

In an effort to curtail any potential (albeit minimal) prejudice to Plaintiff by the passing of the dispositive motions deadline, the Court *sua sponte* grants Plaintiff an extension to file a summary judgment motion confined to Defendants' newly added counterclaims and affirmative defenses. Any such motion must be filed on or before January 3, 2012. If Plaintiff so files, Defendants shall be given fourteen (14) days or until January 18, 2012, to file a response, and Plaintiff shall be given seven (7) days or until January 25, 2012, to submit its reply to Defendants' response.

 **B. Motion for Partial Summary Judgment**

*1) Standard of Review*

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (2011): "The Court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could lead to judgment in favor of one party or another based upon the substantive legal elements of the claim or defense asserted. Anderson v. Liberty Lobby Inc., 477 U.S. 244, 248 (1986). When the movant supports its motion for summary judgment by affidavits, the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts establishing that there is a genuine dispute for trial. Id. at 249-50.

The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When making its

determination as to whether a material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. Liberty Lobby, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). After the movant has met his initial burden, the burden shifts to the non-moving party to assert specific facts, in a form admissible at trial, that demonstrate that a genuine issue of material fact exists. Liberty Lobby, 477 U.S. at 248. If the non-moving party does not meet this burden, the Court may grant the Motion for Summary Judgment. Fed. R. Civ. P. 56(e).

*2) Claim of Breach of Contract for the Sale of Goods*

Plaintiff contends that Defendants entered into a contract for the design *and manufacture* of fireplace remote control systems and that Defendants' failure to tender conforming samples constituted a breach of the contract with Plaintiff. Without addressing the existence of a contract for the *design* of remote products, Defendants contend that insufficient evidence exists to prove a contract for the *manufacture* of 20,000 units. For purposes of this motion, the Court presumes that sufficient evidence exists to demonstrate a material fact as to the existence of a contract for the design of the fireplace remote control systems. Thus, the in analyzing the instant Motion, the Court considers only whether the contract at issue is one for the *design and manufacture* of 20,000 units.

The Court has previously ruled that North Carolina law governs. (Doc. No. 26, p.6, n.1). It is well-settled that to prove a breach of contract Plaintiff must prove: (1) the existence of a valid contract and (2) breach of the terms of that contract. Lake Mary Ltd. P'ship v. Johnston, 551 S.E.2d 546, 554 (N.C. App. 2001). To survive summary judgment on the issue, Plaintiff must provide more than a scintilla of demonstrable evidence which establishes that a valid contract for the sale of manufactured goods existed, and that Defendants breached the terms of the agreement. Plaintiff has failed to present sufficient evidence of a contract for the manufacturing of 20,000 units, and its claim

7

of breach of contract for the sale of goods fails on the merits.

"The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980) (citation omitted). "Mutual assent is normally established by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract." Creech v. Melnik, 495 S.E.2d 907, 912 (N.C. 1998) (citation omitted). Most importantly here, the document explicitly states, "Janifast will issue manufacturing quotation upon design completion." The document also provides, "Tooling required to manufacture the designs will be quoted upon design completion." This language indicates the document was limited to the design of the product and was not intended to provide an offer for manufacture of goods. Accordingly, Plaintiff cannot, as a matter of law, show mutual assent based on the document as tendered to Plaintiff from Defendants.

It is possible, however, that Plaintiff's notations on the document could constitute a counter-offer proposing a contract for the manufacture of the goods. It is a well established principle of contract law that a contract for sale of goods for the price of $500 or more is not enforceable unless there is some writing sufficient to indicate that a contract has been made and it is signed by the party against whom enforcement is sought. N.C.G.S. § 25-2-201 (2011). The alleged contract for the manufacture of 20,000 units is for more than $500. Thus, for the document to comport with the Statute of Frauds, it must be signed by Defendants or fit within one of the well-delineated exceptions to the signature requirement in order to comport with the Statute of Frauds. The document in this case contains a signature of Packard, Plaintiff's representative. It is undisputed, however, that the writing contains no signature by any agent of either Defendants Janifast or mPhase. Plaintiff's handwritten marginalia does not constitute a legally-binding signature and acceptance of an offer on behalf of Defendants - the party against whom enforcement is sought. N.C.G.S. § 25-2-201(1).
8

Absent Defendants' signature and without any evidence of an intent to manufacture goods, no manufacturing contract exists, unless Plaintiff can proffer evidence which demonstrates that a statutory exception to the Statute of Frauds justifies enforcement.

Plaintiff also argues that the lack of Defendants' signature is excusable under the "merchant exception" to the Statute of Frauds contained in N.C.G.S. § 25-2-201(2). Under this exception, a plaintiff may avoid the signature requirement under the Statute of Frauds by showing that the transaction at issue was 1) between merchants, and 2) that a written confirmation of a contract is sent to a party who understands its contents and fails to object within ten days. Id. Neither party disputes its merchant status. Therefore, the merchant exception is applicable to the document if Plaintiff can demonstrate that written confirmation was sent to Defendants, and Defendants failed to object within ten days.

The North Carolina Court of Appeals has recently found that a confirming document, sufficient to satisfy this statutory exception, must contain three elements: 1) "it must evidence a contract for the sale of goods"; 2) "it must be 'signed'"; and 3) "it must specify a quantity." Thermal Design, Inc., v. M&M Builders, Inc., 698 S.E.2d 516, 522 (N.C. App. 2010). Plaintiff contends that an email dated March 28, 2006, is a confirming document sufficient to satisfy the merchant exception. In this email, Defendant states: "[w]e will make sure you have the product in August.... I am shooting to start production in May and shipping the end of July." While this the email constitutes a signature and arguably evidences an intent to produce goods pursuant to the contract, the email does not satisfy the third prong of the Thermal Design test. As a matter of law, the contents of this email do not allege with any specificity a quantity of goods which Defendant has agreed to manufacture. Thus, this email does not constitute a confirming document. Without a confirming document which specifies a quantity to which Defendants assent to manufacture, no

9

Case 3:10-cv-00019-FDW -DCK   Document 81   Filed 11/16/11   Page 9 of 11

contract for manufacturing of goods can exist.

Since the specified email does not constitute a confirming document under the merchant exception to the statute of frauds, and since no other such evidence is presented which would warrant adopting the exception, the contract to manufacture must contain a signature by the Defendants-the party against whom enforcement is sought. Consequently, because the alleged contract at issue, as amended to include manufacturing terms, does not contain a signature of any agent acting in a representative capacity on behalf of either Janifast or mPhase, Plaintiff has failed to present specific facts, in a form admissible at trial, which demonstrate that a genuine issue of material fact exists as to the existence of a valid manufacturing contract. Liberty Lobby, 477 U.S. at 248.

Since no valid manufacturing contract exists, Defendants, as a matter of law, cannot be held to have breached any contractual duty to manufacture goods. Defendants are entitled to partial summary judgment on any claim for breach of contract to manufacture.

*3) Competent Evidence of Damages*

Having determined that Plaintiff fails to present a genuine issue of material fact as to the existence of a manufacturing contract, the court need not further consider whether Plaintiff can present competent evidence of damages arising under a breach of the contract's manufacturing terms.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED, Plaintiff's Motions to Dismiss Defendants' Counterclaims are DENIED, and Defendants' Motion for Leave to File New Counterclaims and Affirmative Defenses is GRANTED.

IT IS FURTHER ORDERED that Plaintiff may file a motion for summary judgment on the

new counterclaims and affirmative defenses **only**, and that such motion shall be filed no later than January 3, 2012, with responses due by January 18, 2012, and replies due January 25, 2012.

IT IS SO ORDERED.

Signed: November 16, 2011

Graham C. Mullen
United States District Judge